# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| IGT, a Nevada Corporation, ) | 2:04-cv-1676-RCJ-RJJ |
| *Plaintiff*, ) | |
| v. ) | |
| ) | **ORDER** |
| ALLIANCE GAMING CORPORATION, ) a Nevada Corporation; BALLY GAMING ) INTERNATIONAL, INC., a Delaware ) Corporation; and BALLY GAMING, ) INC., a Nevada Corporation d/b/a BALLY ) GAMING & SYSTEMS, ) | |
| *Defendants*. ) | |
| AND RELATED COUNTERCLAIMS ) | |

This matter comes before the Court on Bally Technologies, Inc., Bally Gaming International, Inc., and Bally Gaming, Inc.'s (collectively "Bally") Motion to Compel IGT's Compliance with the Court's September 28, 2006 Order (#302) and Motion for Leave to Amend Answer and Counterclaim. (#400.) The Court has considered the Motions, the pleadings on file, and oral argument on behalf of all parties and hereby issues the following Order.

## BACKGROUND

Bally asks this Court to compel IGT's compliance with the Court's September 28, 2006, Order. In the September Order, the Court ordered IGT to produce various documents regarding litigation between IGT and former IGT in-house attorneys, Shawn and Lena Van Asdale

(collectively "Van Asdale"). Bally also asks the Court to sanction IGT for failure to comply with the Court's Order. Bally claims IGT has not complied with the Court's Order while IGT assert that it has. Bally further asks this Court for leave to amend its Answer and Counterclaims.

On July 8, 2004, Van Asdale filed a complaint with OSHA alleging IGT violated 18 U.S.C. § 1514A, the Sarbanes-Oxley Act. Van Asdale withdrew the OSHA complaint approximately four months later and subsequently filed a complaint (the "Complaint") for retaliatory discharge against IGT in federal district court. In the Complaint, Van Asdale alleges that IGT long knew that certain "Wheel Patents," which IGT now argues Bally has infringed, were invalid. The Wheel Patents are associated with the Vintage Monte Carlo, a gaming machine and wheel game. Bally has created new versions of this machine, which IGT claims infringe upon the Wheel Patents. According to Van Asdale, after Anchor (IGT's predecessor) and IGT merged, Anchor's management materially misstated the Wheel Patents' value and fraudulently concealed this information from IGT's investors and the public. In addition, the Complaint further contends that Anchor concealed from IGT information regarding the Wheel Patents' validity. The Complaint also alleges that IGT's outside counsel at the time informed IGT the Wheel Patents were invalid. Van Asdale sued IGT for purportedly retaliating against him for investigating these fraudulent activities. Bally argued the Van Asdale litigation documents were relevant to the instant case because IGT had accused Bally of infringing six patents, including two Anchor Wheel Patents at issue in the Van Asdale litigation.

Bally claims it first learned about the Van Asdale litigation in March, 2006, when reviewing IGT's 2005 Annual Report. The Annual Report revealed that IGT had filed a motion to dismiss in the Van Asdale litigation, which the district court denied, and that IGT was planning to appeal that denial to the Ninth Circuit. Although the trial court proceedings were

under seal, IGT's counsel in the Van Asdale litigation never asked the Ninth Circuit to seal the documents it filed in the appeal. On March 16, 2006, Bally's counsel obtained a copy of all publicly-available materials on file with the Ninth Circuit.

On September 28, 2006, this Court issued its Order (#294) wherein it stated that IGT "waived privilege as to the actual documents filed in the Ninth Circuit's public files and the subject matter contained in those documents." (*Id.* at 18.) The Court further ordered IGT to produce the documents related to the Van Asdale litigation filed with OSHA. The Court also ordered IGT to produce the Laxalt Report. Bally now argues IGT has failed to comply with this Court's Order regarding production of the above-mentioned documents. Specifically, Bally argues that IGT failed to produce a complete version of the Laxalt Report. Bally also contends that IGT failed to produce the required Ninth Circuit filings and the documents filed with OSHA.

**DISCUSSION**

**I.    IGT's Ninth Circuit/OSHA Filings**

In its Order, the Court found that IGT had "voluntarily waived" its attorney-client privilege with the documents filed in the Ninth Circuit's public files. The documents filed with the Ninth Circuit include the OSHA complaint, the complaint in the Van Asdale litigation, the Van Asdale court's denial of IGT's motion to dismiss, the discovery plan, and the docket sheet for the Van Asdale litigation.

**A.    Scope of the Waiver—What IGT Must Produce**

"Voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). Courts have also been quick to note, however, that this waiver only extends "to communications about the matter

actually disclosed." *Chevron v. Penzoil*, 974 F.2d 1156, 1162 (9th Cir. 1992). Further, courts narrowly construe subject matter waivers in patent cases. *See, e.g., Dunhall Pharms., Inc. v. Discus Dental, Inc.*, 994 F. Supp. 1202, 1209 (C.D. Cal. 1997) (citations omitted).

In its Order, the Court stated that IGT "waived privilege as to the actual documents filed in the Ninth Circuit's public files and the subject matter contained in those documents." (#294 at 18.) The Court also held that the "waiver extends to only those communications about the matters actually disclosed in the Ninth Circuit filings." (*Id.*) The Court further warned that the waiver did not extend to "all documents related to any and all subjects mentioned in the filings" because "[a] broad ruling that IGT produce all documents related to any and all subjects mentioned in the filings could result in production of documents otherwise remaining privileged." (*Id.* at 22.)

Both parties concede IGT has produced the documents actually filed in the Ninth Circuit's public files. The parties disagree, however, on whether IGT has produced communications about the matters actually disclosed in the Ninth Circuit filings. In essence, the parties disagree as to what "the matters actually disclosed" entails. Although the Court used this language in its prior Order, it did not define "matters actually disclosed." However, the Court issued a warning to Bally that the waiver did not apply to "any and all subjects mentioned in the filings . . . ." In its Motion, Bally attempts to use the Court's Order to obtain free reign or discovery on all topics mentioned in the Ninth Circuit filings. As explained below, the Court does not construe its Order as broadly as Bally desires.

Although the court stated that IGT waived its privilege to the subject matter actually disclosed in the Ninth Circuit filings, the Ninth Circuit construes subject matter waivers narrowly. *See, e.g., Chevron Corp. v. Pennzoil Co*, 974 F.2d 1156, 1162 (9th Cir. 1992) (citing

Page 4 of 11

*Weil v. Investments/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981)). Where waiver of attorney-client privilege has occurred, the scope of that waiver should be determined with reference to considerations of fairness. *See In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 255 (6th Cir. 1996). In this case, ordering IGT to produce documents and discovery on all topics mentioned or discussed in the Ninth Circuit's public filings would not comport with "considerations of fairness."

Just as the Court did in its Order, Bally focuses on *Chevron*. In *Chevron*, Penzoil disclosed to an outside auditor memoranda surrounding Penzoil's subsidiary tax issues, which also related to its tax deferral strategies. 974 F.2d at 1162. Chevron argued that not only did Penzoil waive its privilege to these memoranda, but it also waived the attorney-client privilege to all communications relating to the "hoped for tax deferral." *Id.* The court ruled the waiver applied "only to the communications about the matter actually disclosed," and not "every document or communication that touched on the more general tax deferral question." *Id.* Like In *Chevron* where Penzoil tried to access "every document or communication that touched on the more general tax deferral question" and not just documents that related to the memoranda, Bally wants the Court to give it access to every document or communication that touches on any subject whatsoever mentioned in the Complaint or other filings. Such a finding would allow Bally to gain access to an almost unlimited number of documents. Such a waiver is too broad.

Although the Court recognizes Bally's valid interest in discovering all documents relating to the subject matter waived, the Court must balance such interest with IGT's countervailing interest in protecting privileged communications. Although the Court has held that IGT waived its privilege to the documents filed in the Ninth Circuit files, as well as to the subject matter actually disclosed in those documents, the Court limits its holding and does not construe it as

broadly as does Bally. The Court construes "subject matter actually disclosed" as subject matter in the waived documents relating to the Van Asdale's specific allegations regarding patent invalidity. In its original Motion to Compel, Bally focused on the alleged privileged communications regarding patent invalidity. Now, Bally seeks a broad range of disclosures including materials that are not disclosures of an attorney-client privileged communication. Moreover, this case is different in some regards than those cited by Bally. In *Chevron*, Penzoil disclosed memoranda it had produced. In this case, IGT disclosed documents created by other individuals. These documents contain allegations which may or may not be true and which may or may not reflect IGT's positions. In *Chevron*, Penzoil disclosed self-created documents disclosing Penzoil's beliefs and positions.

**II.     The Court's Prior Order did not Discuss Work product**

IGT correctly asserts that the Court's September Order only held that the waiver applied to attorney-client privileged communications. The Order did not discuss the work product privilege or hold that IGT had waived this privilege with respect to the "subject matter actually disclosed" in the filings. Indeed, in its Order the Court explicitly warned that "[a] broad ruling that IGT produce all documents related to any and all subjects mentioned in the filings could result in production of documents otherwise remaining privileged." Bally is not required to hand over any documents "otherwise privileged" by the work product doctrine. However, as the party asserting work product privilege, IGT bears the burden to establish its applicability. Thus, IGT must demonstrate if any of the documents required to be disclosed pursuant to the Court's Order are protected by the work product privilege.

### III. The Laxalt Report

The Court's Order required IGT to produce the Laxalt Report because Laxalt was acting as an independent investigator and not as IGT's counsel when he prepared his report, and thus the report was not privileged information. According to Bally, IGT has refused to produce the entire report. Specifically, Bally asks this Court to compel IGT to produce Appendices B-E, Exhibits 1-4, 6-8, 10-11, 14-23, 26, 28-33, and 35. Bally also asks this Court to order IGT to produce the notes that Laxalt and Spencer (Spencer assisted Laxalt in preparing the report) produced during their "investigation."

First, in its Order, the Court ordered IGT to produce the report because it found that Mr. Laxalt was neither working in his capacity as an attorney nor offering legal advice to IGT. Thus, the report that Laxalt created was not work product or privileged information, and the Court therefore ordered IGT to produce it. IGT produced the report but has not produced the documents listed above. IGT claims these documents were not produced by Laxalt or Spencer. Rather, IGT asserts that these documents consist of otherwise privileged or work product materials prepared by IGT and given to Laxalt to assist him in producing his report. Bally argues IGT waived any privilege or work product status by allowing Laxalt to view this material. The Court did not previously rule that IGT had waived any attorney client or work product privilege in connection to the Laxalt Report.

#### A. Work Product

Bally does not argue the requested documents are not work product; rather, it argues IGT waived the work product protection with respect to these documents. First, Bally argues IGT waived its work product protection because it previously disclosed the requested documents in the Van Asdale litigation. During the Van Asdale litigation, IGT told the Van Asdale court that

Page 7 of 11

it had disclosed the Laxalt report to the Van Asdales as well as "some of the factual" documents contained with the Report. Bally contends that this disclosure in the Van Asdale litigation amounts to a waiver. However, even if it did, it only acts as a waiver as to the documents disclosed in that litigation. IGT asserts, and Bally does not refute, that the documents IGT disclosed in the Van Asdale litigation are the same as those it has disclosed pursuant to this Court's Order. Thus, IGT has not conceded waiver of its work product as Bally asserts.

Bally also contends IGT waived its work product protection for any materials provided to Laxalt and Spencer in connection with their independent investigation. Both parties agree as to the standard the Court should apply: The work product privilege may be waived through disclosure of the document, if the disclosure of work product "substantially increases the possibility that an opposing party could obtain the information." *See, e.g., Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 609 (D. Nev. 2005) (citations omitted). IGT argues that Laxalt and Spencer had confidentiality agreements not to disclose the materials at issue, and thus, it is unlikely that disclosing the work product to Laxalt and Spencer in and of itself substantially increased "the possibility that an opposing party could obtain the information." Bally argues, however, that the information actually reached IGT's adversaries. Specifically, Bally asserts that the Van Asdales received the requested documents in connection with the Van Asdale litigation. IGT contends it already handed over the documents disclosed to the Van Asdales, and that the remaining documents were produced under seal pursuant to the Seal Order in the Van Asdale litigation.

The Court holds that IGT waived any privilege as to documents disclosed to third parties. However, this waiver does not apply to exhibits <u>only</u> produced to the Van Asdales under sealed order. Disclosing documents to the Van Asdales in the separate litigation under seal cannot form

the basis of a waiver argument. Accordingly, IGT must produce all exhibits that have been disclosed to third parties, other than exhibits produced <u>only</u> to the Van Asdales under sealed order. Further, IGT must produce all other exhibits to the Laxalt Report for an in camera inspection. The Court thereafter will determine whether these other exhibits are entitled to work product protection.

**IV.    Motion for Leave to Amend**

Bally seeks leave to amend its Answer and Counterclaims to add recently discovered facts regarding its inequitable conduct and unclean hands affirmative defenses, antitrust counterclaims, and counterclaims for a judgment of unenforceability. Bally claims it has recently discovered additional instances of inequitable conduct by IGT that it did not include in its original Answer and Counterclaims. Bally seeks leave to amend seventeen months past the deadline specified in the First Amended Scheduling Order. (*See* #55.)

**A.    Standard**

Once a district court has entered a pretrial scheduling order under Rule 16 of the Federal Rules of Civil Procedure, the standards of Rule 16 control any request to amend the complaint. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-608 (9th Cir. 1992). A motion to amend filed after the deadline indicated in the pretrial scheduling order for such motions may be treated as a *de facto* motion to amend the scheduling order, and granted upon a showing of "good cause" under Rule 16(b). *Id.* at 609.

In determining whether a party has demonstrated "good cause," the court "primarily considers the diligence of the party seeking the amendment." *Id*. Thus, a district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (citing Fed. R. Civ. P. 16 advisory committee's notes).

**B.     Analysis**

Bally asserts it recently discovered facts relating to two instances concerning IGT's inequitable conduct. Bally argues they have good cause because they could not have sought leave to amend until now because they were unaware of these new facts. Specifically, Bally contends it has recently discovered that (1) IGT intentionally withheld the Wheel of Gold prior art during prosecution of the '573 patent, and (2) IGT intentionally withheld the Vintage Monte Carlo prior art.

Bally claims that the Wheel of Gold machine (prior art) invalidates the '573 patent. According to Bally, the Wheel of Gold game has a wheel-of-fortune like structure that invalidates the '573 patent. Bally claims it has only recently obtained evidence demonstrating that IGT intentionally withheld the Wheel of Gold prior art from the patent office. On January 11 and 12, Bally deposed Anthony Baerlocher, an inventor of the '573 patent. According to Bally, Mr. Baerlocher's testimony "reveals that IGT not only intentionally withheld the Wheel of Gold, IGT intentionally misrepresented to the Patent office in 1997 that no game with a second level wheel of fortune rotatable wheel about an axis was known in the prior art." While IGT correctly asserts that Bally was aware of the Wheel of Gold prior to this deposition, Bally did not have sufficient evidence to allege IGT intentionally withheld the Wheel of Gold machine from the patent office. In September, 2006, this Court ordered IGT to produce the Laxalt Report and other related documents, as discussed above. IGT's disclosure of these documents produced new evidence to support Bally's arguments that IGT had intentionally withheld the Vintage Monte Carlo prior art.

Bally made these evidentiary discoveries after the deadline to amend had passed. The "good cause" standard "primarily considers the diligence of the party seeking the amendment."

*Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 430 F. Supp. 2d 1157, 1163 (D. Nev. 2006). Bally acted diligently in confirming its suspicions after it discovered this new evidence. Thus, Bally has demonstrated good cause. Accordingly, the Court grants Bally's Motion to Amend.

## CONCLUSION

The Court finds that IGT did not waive its work product privilege with respect to the Laxalt Report, the OSHA filings, and the Ninth Circuit public filings. Further, the Court grants in part and denies in part Bally's Motion to Compel to the extent analyzed above. Accordingly, IT IS HEREBY ORDERED that Bally's Motion to Compel (#302) is *granted in part* and *denied in part*. IT IS FURTHER ORDERED that Bally's Motion for Leave to Amend its Answer and Counterclaims (#394) is *granted*.

DATED:     August 20, 2007.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE