**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IGT, a Nevada corporation, ) | 2:04-cv-1676-RCJ-RJJ |
| Plaintiff, ) | |
| vs. ) | **ORDER** |
| ALLIANCE GAMING CORPORATION, a Nevada corporation; BALLY GAMING INTERNATIONAL, INC., a Delaware corporation; and BALLY GAMING, INC., a Nevada corporation d/b/a BALLY GAMING & SYSTEMS, ) | |
| Defendants. ) | |
| AND RELATED CROSS ACTION. ) | |

This matter comes before the Court on Defendants Bally Technology, Inc., Bally Gaming International, Inc., and Bally Gaming, Inc.'s (collectively "Bally") Motions for Relief Pursuant to Fed. R. Civ. P. 56(f).  (#610 and #626).  The Court has considered Defendants' Motions and the pleadings on file on behalf of all parties.  IT IS HEREBY ORDERED that Bally's Motions for Relief Pursuant to Fed. R. Civ. P. 56(f) are *granted*.  (#610 and #626).

**I.     *In Camera* Inspection of Laxalt Exhibits.**

Bally requests the Court to continue IGT's motion for summary judgment until it can obtain a complete factual record.  Thus far, IGT has failed to produce the exhibits and appendices to the Laxalt report, which describes IGT's inequitable conduct with respect to the prosecution of '000 and

1   '646 patents, claiming the documents are work product. IGT submitted those documents for an *in*
2   *camera* inspection.

3       The primary purpose of the work product privilege is to "prevent exploitation of a party's
4   efforts in preparing for litigation." *Admiral Ins. Co. v. United States Dist. Ct.*, 881 F.2d 1486, 1494
5   (9th Cir. 1989). The work product rule is not a privilege "but a qualified immunity protecting from
6   discovery documents and tangible things prepared by a party or his representative in anticipation of
7   litigation." *Id.*; Fed. R. Civ. P. 26(b)(3). Thus, for a tangible document to be work product two
8   requirements must be met. First, the document must have been prepared by a party or his
9   representative. Second, the document must have been prepared in anticipation of litigation. The
10  principal function of the work product rule is to force each side to do its own work. *Hewlett-*
11  *Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533, 538 (E.D. Cal. 1987). Before the Court for
12  an *in camera* review are the Laxalt report's appendices and exhibits that IGT has not produced to
13  Bally upon IGT's claim that the documents are protected under the work product doctrine.

14      After the Court's *in camera* inspection, IGT must turn over the following exhibits and
15  appendices from the Laxalt report, as the documents are not entitled to work product protection:

16      **Appendix B: PRIV024396-PRIV024425 and 024432-PRIV024512.** Appendix B contains
17  Bruce Laxalt and Dave Spencer's notes from interviews of IGT employees. At the time Laxalt
18  conducted the interviews, Laxalt was acting as an independent investigator, not as IGT's attorney.
19  (#241 Exhibit CC-8 at 35:16-18). Therefore, Appendix B does not fall under the work product
20  doctrine as the interviews were not conducted by IGT or by IGT's representative.

21      **Appendix D: PRIV025005-PRIV025006.** Appendix D contains an exhibit list from
22  Laxalt's notes. Therefore, Appendix D is not entitled to work product protection as it was not
23  prepared by IGT or its representative.

24

25

**Appendix E** contains Exhibits 1-11 and must be turned over in accordance with this order.

**Exhibit 1: PRIV024516-PRIV024536.** Exhibit 1 is a demand letter from the Van Asdale's lawyers to IGT's lawyers. This document is not entitled to work product protection as it was not prepared by IGT or its representatives.

**Exhibit 2: PRIV024537-PRIV024539.** Exhibit 2 is a chronology of events per plaintiff. Since Laxalt prepared the notes while he was acting as an independent investigator, the documents are not entitled to work product protection.

**Exhibit 3: PRIV024541-PRIV024676.** Exhibit 3 is a letter from Burton, Bartlett & Glogovac to help Laxalt in his investigation. Neither the letter or any of the attachments fall under the work product doctrine. The items in Exhibit 3 were created as IGT, in its pre-merger due diligence, determined the validity and ultimate value of Anchor's Wheel of Gold patent rights. The documents were not created in anticipation of litigation.

**Exhibit 4: PRIV024677-PRIV024710.** Exhibit 4 contains documents Burton, Bartlett & Glogovac produced in response to Mr. Laxalt's request for documents. The documents produced are emails (with attachments) dated from September 11, 2001, to December 17, 2001. These communications are dated three years prior to litigation. Therefore, Exhibit 4 is not protected under the doctrine of work product because the documents were not prepared in anticipation of litigation but were part of IGT's pre-merger due-diligence.

**Exhibit 6: PRIV024726-PRIV024755.** Exhibit 6 contains several emails discussing IGT's research into the Bally/Monte Carlo issue. Several of the emails are from Bally's counsel to IGT. These are not protected as work product. The other documents in Exhibit 6 relate to in-house emails at IGT from 2001 to 2003. The Court will require these emails also be produced because these emails were not created in anticipation of litigation.

**Exhibit 10: PRIV024780-PRIV024787.** Exhibit 10 contains an expense report and several receipts from Mr. Van Asdale. While the documents do not appear to be applicable to the present case, they are not work product.

**Exhibit 11: PRIV024788-PRIV024794.** Exhibit 11 contains a request for $25,000 to provide an investigation into prior art on a patented product and related financial documents. These documents are not work product as the documents were not created in anticipation of litigation.

**Exhibit 14: PRIV024822-PRIV024850.** Exhibit 14 is a letter from Martin Hirsch to Lena Van Asdale regarding a draft information disclosure statement and PTO-1449 form. These documents were not prepared in anticipation of litigation and, therefore, are not work product.

**Exhibit 15: PRIV024851-PRIV024852.** Exhibit 15 consists of a document prepared by Martin Hirsch depicting a patent number, issue date, inventor, and title. This document is not work product as it was created in the normal course of business.

**Exhibit 16: PRIV024853-PRIV024857.** Exhibit 16 consists of patent documents of the U.S. additional payout indicator family and a U.K. patent application. These documents do not fall within the type of documents protected as work product.

**Exhibit 19: PRIV025034-PRIV025043.** The final document in Exhibit 19 is a letter from the Van Asdales' counsel to IGT. This letter is not protected as work product as the letter was not created by IGT, IGT's counsel, or IGT's authorized representative. The remainder of Exhibit 19 is privileged.

**Exhibit 20: PRIV025044-PRIV025090.** Exhibit 20 contains emails dating from 2001 to 2002. These emails are not work product. First, the 2001 emails occurred during a time when IGT, in its pre-merger due diligence, was determining the validity and ultimate value of Anchor's Wheel of Gold patent rights. Thus, these emails were not generated in anticipation of litigation. The 2002

emails generally talk about sales, possible infringement issues, and patent validity.  These emails were not generated in anticipation of litigation, but rather as part of IGT's normal course of business.

**Exhibit 21: PRIV025091-PRIV025108.**  Exhibit 21 contains documents IGT produced to Laxalt. The documents include correspondence between IGT and other gaming companies–Alliance and Bally.  These documents are not protected as work product.  Furthermore, Exhibit 21 also contains emails that were sent within IGT, however, these emails were not sent in anticipation of litigation and are not work product.

**Exhibit 22: PRIV025109-PRIV025111.**  Exhibit 22 is not work product.

**Exhibit 23: PRIV025112-PRIV025114.**  Exhibit 23 contains notes created by Laxalt.  These documents are not work product as Laxalt acted as an independent investigator, and not as IGT's attorney, while preparing the Laxalt Report.

**Exhibit 28: PRIV025178-PRIV025200.**  Exhibit 28 contains the Joint Venture Agreement between IGT and Anchor Gaming.  This document was not prepared in anticipation of litigation.

**Exhibit 30: PRIV025229-PRIV025238 and PRIV025249-PRIV025258.**  Exhibit 30 contains documents protected as work product and documents that are not protected.  Documents 025229-025238 and 025249-025258 are not protected under the work product doctrine.  These documents include a letter from Alliance Gaming to IGT and a Patent Licence Agreement.  Neither of these documents were prepared in anticipation of litigation.

**Exhibit 32: PRIV025270-PRIV025305.**  Exhibit 32 contains Defendant IGT's Motion to Dismiss for Lack of Subject Matter Jurisdiction and the declarations of Shawn Van Asdale and T.J. Matthews in *Bally v. IGT*, 2-cv-1448-LRH-LRL.  Filing these documents waived any claim of work product.

. . .

1       **Exhibit 35: PRIV025431-PRIV025436.** Exhibit 35 contains emails to and from Laxalt regarding Laxalt's interviews. These documents were not prepared by IGT's attorney or an authorized representative as Laxalt was acting as an independent investigator.

4       **Exhibit 36: PRIV025437-PRIV025557.** Exhibit 36 contains financial information related to Alliance Gaming Corp. and emails between IGT and Bally. These documents are not work product. The emails are related to IGT's investigation into the value of Anchor's wheel patents and were not sent in anticipation of litigation.

8       **Exhibit 37: PRIV025559-PRIV025569.** Exhibit 37 is a patent licence agreement. This document is not protected as work product as it was not created in anticipation of litigation.

10       IT IS HEREBY ORDERED that IGT produce the above referenced exhibits and appendices to the Laxalt Report. IGT has ten days to produce these documents. Bally's has fifty days to depose the relevant witnesses after IGT produces the Laxalt exhibits and appendices. Bally's amendments of its oppositions to IGT's Motions for Summary Judgment are due eighty days after IGT produces the Laxalt Exhibits.

## II.   IGT's Price and Placement Data.

16       Bally further requests relief pursuant to Fed. R. Civ. P. 56(f) as it seeks from IGT price and placement data. The effect that competition from Bally's wheel games has had on IGT's wheel game prices is relevant to whether wheel games are an antitrust market. To date, IGT has only provided Profit Per Unit ("PPU") Reports, which provide the average profit IGT has made on various gaming machines. However, the PPU reports do not contain the terms that IGTs customers have negotiated or the discounts they have received at various times. The PPU reports do not permit Bally to determine whether increased competition from Bally's wheel games forced IGT to give casinos a higher share of the revenue split.

IT IS FURTHER ORDERED that IGT provide price and placement data to Bally. IGT must answer Bally Gaming, Inc.'s First Set of Interrogatories, No. 4. Specifically, IGT must identify: (1) each customer to whom IGT has sold, leased, shipped, or otherwise provided each product in or into the United States; (2) the date(s) of each such sale, lease, and/or shipment; (3) the number of units sold, leased, and/or shipped; (4) the sales or lease price; (5) the total revenue or other consideration provided by Plaintiff in connections with such sale, lease, and/or shipment; and (6) IGT's net profit in connection with such sale, lease, and/or shipment. IGT has 60 days to produce this information. Bally's opposition to IGT's Motion for Summary Judgment No. 6: *Antitrust and Lanham Act counterclaims* is due thirty days after IGT produces the above referenced information.

## CONCLUSION

IT IS HEREBY ORDERED that Bally's Motions for Relief Pursuant to Rule 56(f) are granted. (#610 and #626). Discovery is to proceed immediately in compliance with this order.

DATED: March 14, 2008

_____
ROBERT C. JONES
UNITED STATES DISTRICT COURT JUDGE

(jb)